**UNITED STATES of America, Plaintiff,**

v.

**Greg Yee CHAN, Defendant.**

**No. CR. 94–02176–01 ACK.**

United States District Court,
D. Hawai'i.

April 1, 1998.

Michael A. Weight, Office of the Federal
Public Defenders, Honolulu, HI, for Chan.

*ORDER GRANTING MID–PAC ELEC-TRIC'S MOTION FOR ORDER COM-PELLING PLAINTIFF TO COMPLY WITH ORDER OF RESTITUTION*

KAY, Chief Judge.

## BACKGROUND

On April 10, 1995, Defendant entered a plea agreement which included entering a guilty plea for bank fraud. The bank fraud consisted of Defendant Greg Yee Chan ("Defendant") forging the signature of the president of his employer, Mid–Pac Electric ("Mid–Pac"), on checks drawn on an account with First Hawaiian Bank.

In 1994, prior to the entry of the plea agreement, Richard Close, the president and principal shareholder of Mid–Pac, met with IRS and FBI agents as well as an assistant U.S. Attorney for the District of Hawaii. These government agents asked Mr. Close not to file a civil action against Defendant and told Mr. Close that, as the only victim of Defendant's crimes, Mr. Close would receive the proceeds of forfeiture actions instituted by the United States against Defendant's property. *See* Mid–Pac Mem. Hall Decl. ¶¶ 4–5. The United States subsequently instituted two civil forfeiture actions, one against Defendant's house and one against $7,320 seized from Defendant's residence. The United States has received the funds sought in these actions, including approximately $34,765 from the equity in Defendant's house.

As part of the plea agreement bargain, Defendant agreed not to oppose the forfeiture actions. The plea agreement also provides that Defendant shall make restitution to Mid–Pac in the amount of $358,410, and that "[t]he parties agree that in making full restitution, the Defendant shall be credited with the money he has agreed to forfeit." The plea agreement identifies this money as the proceeds of the sale of his house and the $7,320 seized by the United States. The plea agreement was signed on behalf of the United States by United States Attorney Steven S. Alm and two Assistant United States Attorneys.

On September 26, 1995, this Court approved and accepted the Plea Agreement and entered a judgment. That judgment requires "the defendant [to] pay restitution in the amount of $358,410 to Mid–Pac Electric, Inc., with credit for forfeited assets to Richard Close." Neither Mr. Close nor Mid–Pac has received the funds the United States recovered in either forfeiture action.

Pursuant to the suggestion of an assistant U.S. Attorney for the District of Hawaii, on July 7, 1995, Mid–Pac sent to the Department of Justice ("DOJ") a petition for remission of the forfeited funds. That petition was denied. Mid–Pac appealed, and DOJ denied its appeal.

On November 26, 1997, Mid–Pac filed a motion for an order compelling the United States to comply with the order of restitution. Mid–Pac also seeks interest and attorney's fees. Defendant joined in Mid–Pac's motion by letter dated December 1, 1997. The United States filed an opposition on December 4, 1997. Mid–Pac filed a reply on December 11, 1997, and the United States filed a "supplemental memorandum in opposition" on December 18, 1997. The Court heard oral arguments on March 2, 1998.

## DISCUSSION

Mid–Pac filed this motion seeking an order compelling the United States to provide funds to it that the United States collected from Defendant as restitution. Mid–Pac also seeks interest and attorneys' fees. The United States argues that the plea agreement is unenforceable and that Mid–Pac does not have standing in this action.

### A. Enforcement of the Plea Agreement

█ The United States first argues that Plaintiff is not entitled to relief because the plea agreement is unenforceable. Specifically, the United States contends that the U.S. Attorney's Office did not have the authority to provide that the proceeds of a forfeiture would be paid to Mid–Pac. The United States relies on DOJ's denial of Mid–Pac's remission petition to support this argument.

DOJ regulations provide for remission of forfeited proceeds when a person "has a val-

id, good faith, and legally cognizable interest in the seized property as owner or lienholder" 28 C.F.R. § 9.5(a). If a person who was not involved in the offense underlying the forfeiture does not meet the minimum conditions for remission, the DOJ may grant mitigation if there are extenuating circumstances. 28 C.F.R. § 9.5(a).

In this case, the DOJ denied Mid–Pac's request on two grounds: first, that Mid–Pac failed to establish a "traceable ownership interest" in the seized property, and second, that it failed to demonstrate extenuating circumstances to warrant mitigation. *See* Mid–Pac Reply, Exh. 1. The DOJ's conclusions are an abuse of discretion and clearly erroneous. By agreeing to pay the forfeited funds to Mid–Pac before receiving them, the United States became a trustee for those funds, and Mid–Pac became a beneficiary. *See United States v. Berardini,* 112 F.3d 606, 611 (2d Cir.1997) (noting that, if the defendant makes restitution payments to the United States before victims are identified, then the United States acts as trustee and the victims may obtain their money from the United States). As beneficiary, Mid–Pac has a clearly traceable interest in those funds. Furthermore, extenuating circumstances are clearly established because the United States failed to live up to a contractual promise made before this Court in a plea agreement, and Mid–Pac relied on the representations and contractual agreement of the United States to its detriment by not filing a civil action against Defendant and not filing a claim in the civil forfeiture actions instituted by the United States.

In addition, Mid–Pac does not seek to enforce only the terms of the plea agreement; these terms were incorporated into the Court's judgment. Furthermore, the United States does not argue that the Court does not have jurisdiction to enforce its own order.

### B. Standing

██ The United States also argues that Mid–Pac does not have standing to obtain restitution in this action. To support this proposition, the United States cites a series of cases in which courts have held that a victim may not challenge on appeal a court's order setting or rescinding restitution payments made by a criminal defendant. *See, e.g., United States v. Mindel,* 80 F.3d 394, 395–96 (9th Cir.1996); *United States v. Johnson,* 983 F.2d 216, 218 (11th Cir.1993); *United States v. Grundhoefer,* 916 F.2d 788, 792–93 (2d Cir.1990). Yet, Mid–Pac does not challenge the authority of this Court to set or modify the restitution payments by Defendant. On the contrary, Mid–Pac seeks only to enforce this Court's Order and the United States' obligation under the constructive trust. By agreeing to provide the proceeds of the forfeiture actions to Mid–Pac as restitution from Defendant, the United States in effect became a constructive trustee of those funds, and Mid–Pac may seek recovery of those funds from the United States pursuant to this Court's judgment. *See United States v. Berardini,* 112 F.3d 606, 611 (2d Cir.1997) (noting that, if the defendant makes restitution payments to the United States before victims are identified, then the United States acts as trustee and the victims may obtain their money from the United States); 18 U.S.C. § 3663(h) (providing that an order of restitution may be enforced by a victim named in an order to receive restitution).[1] Payment of the forfeiture proceeds to Mid–Pac by the United States as constructive trustee in no way impacts on the validity of the forfeiture proceedings, as the forfeited funds have been held under a constructive trust for Mid–Pac.

██ The Court also notes that Defendant has joined in Mid–Pac's motion by letter dated December 1, 1997. It is well settled that a defendant has standing to enforce a plea agreement as a contract and seek specific performance. *See, e.g., Carter v. McCarthy,* 806 F.2d 1373, 1377 (9th Cir.1986) (citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286, 296 (2d Cir.1976).

---

1. After the issuance of the judgment in this case, 18 U.S.C. § 3663(h) was replaced by 18 U.S.C. § 3664(m)(B), which provides that a victim named in a restitution order may obtain a judgment that may serve as a lien against a defendant's property.

In light of the fact that the United States does not dispute that it has failed to provide Mid–Pac with the proceeds of the forfeiture actions in violation of the plea agreement and this Court's previous order, the Court orders the United States to comply with its judgment in this case and provide the proceeds of the forfeitures to Mid–Pac.

## C. Interest

■■■ The United States argues that the United States cannot be required to pay interest. The United States is correct that a court may not award pre-judgment interest against the United States. *See United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir.1995) ("[S]overeign immunity will prevent a simple claim for pre-judgment interest [against the United States. . . .]"). The Ninth Circuit has recognized, however, that the United States may be required to pay interest on funds improperly seized because this is not technically pre-judgment interest but a disgorgement of proceeds of the seized property. *Id.* This argument is equally applicable here. The United States as trustee of the forfeited funds may not retain the interest actually or constructively earned on the forfeited funds.[2] *See Id.* at 1496.

## D. Attorneys' Fees

■■■ The United States also argues that Mid–Pac is not entitled to attorney's fees because this is a criminal action. The Equal Access to Justice Act ("EAJA") provides that a Court shall award attorneys' fees against the United States in a civil action, unless the United States is "substantially justified" or other special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1).

■■■ Courts have noted that an ancillary motion by a third party in a criminal case may be considered a civil action for purposes of awarding attorneys' fees. For example, in *United States v. Douglas,* the court held that a third-party's motion to adjudicate its interest in property seized in a criminal forfeiture is considered a civil action under the EAJA. 55 F.3d 584, 585 (11th Cir.1995); *see also United States v. Bachner,* 877 F.Supp. 625, 627 (S.D.Fla.1995); *cf. Purcell v. United States,* 908 F.2d 434, 437 (9th Cir.1990) (stating that a Fed.R.Crim.P. 41(e) motion for return of property by person under investigation was a civil action under the EAJA because no formal criminal proceedings had been initiated). The *Bachner* court explained, "The relief sought, and not the nature of the proceeding, determines whether the matter is criminal or civil." 877 F.Supp. at 627. Here, Mid–Pac does not seek criminal sanctions but only restitution. Thus, its motion is characterized as a civil action for purposes of the EAJA.[3]

■■■ The United States's actions clearly warrant an award of attorneys' fees and costs. The United States has provided no justification for dishonoring its contractual obligations and its refusal to turn over the proceeds of the forfeiture actions as it had agreed. It holds these funds as constructive trustee. The conduct of the DOJ in handling this case was outrageous and an embarrassment to the United States.[4] Accordingly, the Court orders the United States to pay Mid–Pac reasonable attorneys' fees and costs. *See Bachner,* 877 F.Supp. at 628 (ordering the United States to pay attorneys' fees to a

---

**2.** The Ninth Circuit has noted that the United States may earn interest constructively on funds held in a non-interest bearing account because the possession of those funds may result in the United States borrowing less and thereby saving the payment of interest. *$277,000 in U.S. Currency,* 69 F.3d at 1495–96. In that case, the court concluded that the funds at issue earned interest constructively at the United States's alternative borrowing rate. *Id.*

**3.** In the alternative, the Court notes that if this action were characterized as criminal for purposes of obtaining attorneys' fees, then the recently enacted Hyde Amendment would apply.

Pub.L. 105–119, Title VI § 617, 111 Stat. 2440, 2519. That provision permits a court to award attorneys' fees to the prevailing party (other than the United States) in a criminal case "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith." *Id.* Awards under the Hyde Amendment are made pursuant to the procedures and limitations under the EAJA. *Id.* The Court finds the position of the United States in this case to be vexatious.

**4.** The Court appreciates that the United States Attorney's Office for the District of Hawaii has been compelled to follow the directives of the DOJ in this matter.

party because the United States reneged on a stipulation, which required the party to bring that action).

### CONCLUSION

For the foregoing reasons, the Court GRANTS Mid–Pac's motion to compel the United States to comply with the Court's order of restitution. In addition, the Court ORDERS the United States to disgorge interest earned on forfeited funds and to pay Mid–Pac its reasonable attorneys' fees and costs. The Court further ORDERS Mid–Pac to submit an affidavit with its attorneys' billing statements within ten (20) days from the date of this Order. Defendant shall have seven (10) days to oppose the same.

IT IS SO ORDERED.